UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CRIMINAL NO. 05-10200-MLW |
| | ) | |
| ANGEL CARDONA-LEON | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The government respectfully submits this memorandum in response to the defendant's sentencing memorandum and request for downward departure.

The defendant has requested four downward adjustments to his offense level. The government expects to be in agreement with two of these adjustments--a three-level reduction for acceptance of responsibility and a two-level reduction pursuant to U.S.S.G. §2D1.1(b)(9) (safety valve adjustment).[1] The government disagrees with the defendant's contentions that he is entitled to a downward adjustment based on his role in the offense and a downward departure on the basis of his status as a deportable alien.

**(1) Defendant's Role in the Offense**

Cardona-Leon[2] claims that he is entitled to a two-level

---

[1] The parties have scheduled a safety-valve proffer for February 7, 2007. On February 8, 2007, the government will report to the Court and to the probation department whether, in its view, the defendant has satisfied U.S.S.G. §5C1.2 (a)(5).

[2] The defendant's true name is Luis Conrado Anziane Lara. His alias is used here because that is the name under which he

reduction because he was a minor participant in the criminal activity. Cardona-Leon Sentencing memorandum ¶ IV. The PSR awards no such departure, PSR at ¶ 24, and the facts of the case do not warrant such a departure. Cardona-Leon specifically argues that he is entitled to a two-level downward adjustment because the defendant "was not a main figure in the drug selling activity, but was assisting in the distribution in a limited capacity . . . " Cardona-Leon Sentencing Memorandum ¶ IV. The defendant also asserts that he "is not only less culpable tha[n] most of the other participants because of his actual role in the conspiracy, but also because he only engaged in said activities because of his drug addiction." The defendant's argument fails because he misapprehends the significance of his role in the drug distribution activity, and he offers no support for the proposition that drug addiction is a basis upon which to award a role reduction.

Section 3B1.2 of the U.S.S.G. provides for a two-level decrease in the defendant's offense level if he was a "minor participant" in the criminal activity. A minor participant is one who is substantially less culpable than the average participant but "whose role could not be described as minimal." U.S.S.G. §3B1.2 n. 3(a) and 5. The defendant bears the burden of proving that he is less culpable than most others involved in

---

was charged.

this particular offense and less culpable than defendants charged in similar cases. United States v. Ortiz-Santiago, 211 F.3d 146, 149 (1st Cir. 2000). Cardona-Leon is unable to meet his burden.

Cardona-Leon has pled guilty to one count of conspiring with co-defendant Luis LNU, a/k/a Roberto Carlos Nieves, and unknown others, to distribute in excess of 50 grams of cocaine base (Count One), as well as two substantive counts of distribution (Counts Three and Four).  The offense conduct detailed in the Presentence Report establishes that Cardona-Leon was a cocaine base source of supply for co-defendant Luis LNU.  On two occasions, May 16, 2005 and May 19, 2005, Luis LNU negotiated and consummated crack cocaine transactions with a DEA cooperating witness.  On each occasion, Luis LNU obtained the crack cocaine from Cardona-Leon.  In addition to the drug weight attributable to these two transactions, Cardona-Leon has been held responsible for a quantity of drugs seized from his apartment during the execution of a search warrant.  Under these circumstances, the defendant cannot demonstrate that he was less culpable than his lone co-conspirator.  Each defendant played a pivotal role in this two-defendant conspiracy:  Luis LNU procured the customer and negotiated the transactions, and Cardona-Leon supplied the drugs.  As a source of supply for his co-conspirator, Cardona-Leon's role simply cannot be categorized as "minor."

### (2) Defendant's Status as a Deportable Alien

Cardona-Leon requests a downward departure based on his status as a deportable alien. Cardona-Leon sentencing memorandum, ¶ II. Specifically, Cardona-Leon argues that a departure is warranted because he will be ineligible to serve his sentence in a minimum security facility and to serve part of his sentence in community confinement, and he will likely face an additional period of custody while awaiting deportation. Cardona-Leon Sentencing Memorandum ¶ II.

A district court may depart from the Guidelines only in the "highly infrequent" event that a case falls outside of the heartland. United States v. Clase-Espinal, 115 F.3d 1054, 1057 (1st Cir. 1997); see also United States v. Koon, 518 U.S. 81, 92 (1996). Because the Sentencing Commission knows that "deportable aliens commit crimes" and because "the common facts of a long sentence and likely deportation are not by themselves extraordinary," deportable alien status in and of itself does not remove a defendant from the 'heartland' of the guidelines. United States v. Maldonado, 242 F.3d 1, 5 (1st Cir. 2001).

While deportable alien status alone is not a permissible basis for downward departure, some courts have acknowledged the availability of such a downward departure where the adverse collateral consequences of being an incarcerated deportable alien are sufficiently severe and atypical. See, e.g., United States

v. Veloza, 83 F.3d 380, 383 (11th Cir. 1996) (defendant's claim that he would be ineligible to serve his sentence in a minimum security facility and ineligible for a halfway house did not make his case unusual and thus did not warrant a departure); and United States v. Restrepo, 999 F.2d 650, 644 (2nd Cir. 1993)(the unavailability of preferred conditions of confinement, the possibility of an additional period of detention after the sentence, and the separation from family in the United States due to deportation were not effects that were sufficiently beyond the ordinary to warrant a downward departure).  Cardona-Leon, however, simply fails to assert any adverse collateral consequences of being an incarcerated deportable alien that are sufficiently severe and atypical to take him out of the "heartland."  Instead, Cardona-Leon advances the same arguments that were considered and rejected by the courts in Veloza and Restrepo, and similarly rejected by this Court in United States v. Restrepo, docket number 01-10151-MLW.

                                          Respectfully submitted,

                                          Michael J. Sullivan
                                          United States Attorney


                                 By:   /s/ William H. Connolly
                                        William H. Connolly
                                        Assistant U.S. Attorney

Date: February 6, 2007

Date: February 6, 2007